IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| MIKE NGUYEN,<br><br>    Plaintiff,<br><br>v.<br><br>ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY,<br><br>    Defendant. | 2:24-CV-186-Z-BR |

**MEMORANDUM OPINION AND ORDER**

Before the Court are two motions: Defendant Allstate Vehicle and Property Insurance Company's ("Allstate") Motion for Summary Judgment (ECF No. 26), filed August 7, 2025, and Allstate's Motion to Exclude the Testimony of Plaintiff's Retained Expert Witnesses Chris Rhynehart and Brandon Allen ("Motion to Exclude") (ECF No. 29), also filed August 7, 2025. Having reviewed the motions, briefing, and relevant law, the Court **GRANTS in part** and **DENIES in part** Allstate's Motion to Exclude. The Court further **GRANTS** Allstate's Motion for Summary Judgment in its entirety.

**BACKGROUND**

Plaintiff Mike Nguyen filed this insurance coverage dispute in Texas state court on August 2, 2024. ECF No. 1-5. According to Plaintiff, "[o]n or about May 1, 2022 a storm hit the Hereford, Texas area, damaging" his "house and other property." *Id.* at 3. "Within a few weeks of the hailstorm, Plaintiff observed water damage on the ceiling of his garage." ECF No. 34 at 5. Plaintiff "promptly filed a claim with his property insurance company, Allstate." *Id.* at 5, 7. Allstate inspected Plaintiff's property on May 5, 2022. ECF No. 27 at 9. Allstate "opened coverage for the damage to the exterior of the home, but denied coverage" for Plaintiff's roof "on the basis that the [hail] damage to the roof was cosmetic." ECF No. 34 at

1

5. Plaintiff then sued Allstate for breach of contract, bad faith, and violations of the Texas Insurance Code. *See* ECF No. 1-5. Allstate removed the case to this Court on August 29, 2024. *See* ECF No. 1.

Allstate agrees that Plaintiff's roof is damaged and that at least some of the damage was caused by hail. *See, e.g.,* ECF No. 27 at 9 ("Allstate found damages to the steel roof and various exterior components." (citation modified)). However, Allstate disagrees that the May 1 storm caused the leak in Plaintiff's garage. Allstate points to a "Cosmetic Damage Endorsement"[1] in Plaintiff's insurance policy, which reads:

> Cosmetic damage caused by hail to the surface of a metal roof, including but not limited to, indentations, dents, distortions, scratches, or marks, that change the appearance of the surface of a metal roof.
>
> This exclusion applies to all of the components of the surface of a metal roof, including but not limited to, panels, shingles, flashing, caps, vents, drip edges, finials, eave and gable trim and snow guards, coatings and other finishing materials.
>
> We will not apply this exclusion to sudden and accidental direct physical damage to the surface of a metal roof caused by hail that results in water leaking through the surface of a metal roof.

*Id.* (emphasis omitted). Allstate argues that Plaintiff's policy therefore "excludes coverage for cosmetic damage caused by hail to the surface of the steel roof unless it results in water leaking through the roof surface." *Id.* at 12. Allstate found that the hail storm caused "damages to the steel roof [that] changed the appearance of the roof surface but would not result in leaking through the roof surface." *Id.* at 9. Allstate accordingly "concluded that the damage to the roof was not covered." *Id.* at 9.

---

[1] "These optional endorsements provide for the exclusion of coverage for cosmetic damage caused by hail to roof coverings . . . ." *Commissioner's Bulletin #B-0030-98*, TEX. DEP'T OF INS. (Apr. 23, 1998), https://www.tdi.texas.gov/bulletins/1998/b-0030-8.html [https://perma.cc/L5KL-78QF]; *see also Amphay v. Allstate Vehicle & Prop. Ins. Co.*, No. 2:21-CV-219, 2023 WL 2491285, at *2 (N.D. Tex. Mar. 13, 2023) (Kacsmaryk, J.) (noting that under this exclusion, "cosmetic damage . . . caused by hail is not covered unless it results in water leaking through the surface").

Allstate "prepared an estimate to repair the covered damages it found but the total repair cost did not exceed the $2,523.01 Policy deductible." ECF No. 27 at 9. It therefore made no payment on Plaintiff's claim. *See id.* Roughly six months later, on November 2, 2022, Plaintiff's roofer, "Chris Zysling of Tascosa Roofing Inc., provided an estimate for repairs of additional damages not included in Allstate's estimate for the Claim." *Id.* Zysling took photographs of "the alleged additional damages" and sent them to Allstate. *Id.* at 9–10. "Upon reviewing Zysling's photographs, Allstate made revisions to its repair estimate that caused the total estimate amount to exceed the Policy deductible, resulting in a payment on the Claim." *Id.* at 10. Allstate contends that it "did not change its decision that the damages to the roof were not covered and did not issue any payment for repairs to the roof." *Id.* Nearly a year after that, on September 29, 2023, "a different contractor emailed to Allstate a letter indicating that repairs had been made to the Property." *Id.* Allstate then "issued a payment to Mr. Nguyen for the recoverable depreciation that was available under Allstate's estimate." *Id.*

On April 26, 2024, just under two years after Plaintiff filed his insurance claim, Plaintiff's "attorneys sent to Allstate a pre-suit notice letter pursuant to Section 542A.003 of the Texas Insurance Code." ECF No. 27 at 10. Plaintiff's attorneys also sent Allstate "an unsigned repair estimate totaling $88,599.17," which Allstate asserts was "largely similar in scope to Allstate's estimate, except that it called for the steel roof to be replaced." *Id.* The cost to replace Plaintiff's roof "accounted for $63,635.38, or approximately 72%, of the total estimate amount." *Id.*

Allstate soon "retained a professional engineer, Suzanne Arambel, to conduct another inspection of the Property." ECF No. 27 at 10. Arambel "issued a report in which she detailed her conclusion that the damages to the steel roof at the Property are 'cosmetic in nature, and

3

do not affect the performance or longevity of the roof covering.'" *Id.* (citation omitted). Allstate notified Plaintiff's attorneys of Arambel's findings on June 26, 2024. *See id.* Relying on Arambel's report, Allstate did not change its decision on Plaintiff's claim. *See id.* at 11. Plaintiff then filed suit on August 2, 2024. *See id.*; ECF No. 1-5. A year later, on August 7, 2025, Allstate moved for summary judgment and to exclude the testimony of Plaintiff's retained experts, Chris Rhynehart and Brandon Allen. ECF Nos. 26, 29.

### MOTION TO EXCLUDE

**I. Legal Standard**

Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

FED. R. EVID. 702. To be admissible, expert testimony must meet all four subparts of Rule 702. "The party proffering expert testimony has the burden of establishing by a preponderance of the evidence that the challenged expert testimony is admissible." *Guzman v. State Farm Lloyds*, 456 F. Supp. 3d 846, 852 (S.D. Tex. 2020) (quoting *Gamboa v. Centrifugal Casting Mach. Co.*, No. CV 14-1273, 2015 WL 9948807, at *2 (S.D. Tex. May 15, 2015)).

"A trial court must evaluate the foundation of an expert's testimony to ensure that 'the proffered evidence is both reliable and relevant.'" *Guzman*, 456 F. Supp. 3d at 852

(quoting *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007)); *see also VeroBlue Farms USA Inc. v. Wulf*, No. 3:19-CV-764, 2023 WL 348963, at *11 (N.D. Tex. Jan. 20, 2023) ("The party offering the expert testimony must show that a qualified expert's testimony is relevant (that is, the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue, and the expert's reasoning or methodology properly can be applied to the facts in issue) and reliable (that is, the testimony is based on sufficient facts or data and is the product of reliable principles and methods)." (citation modified)); *Hall Arts Ctr. Off., LLC v. Hanover Ins. Co.*, 327 F. Supp. 3d 979, 1001 (N.D. Tex. 2018) (Fitzwater, J.) ("The court may admit proffered expert testimony only if the proponent, who bears the burden of proof, demonstrates that (1) the expert is qualified, (2) the evidence is relevant to the suit, and (3) the evidence is reliable." (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999))). "An expert's opinion is considered reliable if the reasoning or methodology underlying the testimony is scientifically valid." *Guzman*, 456 F. Supp. 3d at 852 (citation omitted). "Relevance depends upon whether that reasoning or methodology properly can be applied to the facts in issue." *Id.*

Courts look to several factors to determine whether expert testimony is reliable, including:

> whether the expert's opinion was developed for purposes outside of litigation; whether there is an analytical link connecting the case facts with the expert's opinion; whether the expert "adequately accounted for obvious alternative explanations"; whether the expert used the same level of intellectual rigor that would be used in the field; and whether the expert's field of expertise is known to be reliable for the relevant type of opinion.

*Guzman*, 456 F. Supp. 3d at 852 (citing FED. R. EVID. 702 advisory committee's note to 2000 amendment). "The reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, [and] the link between the facts and

the conclusion . . . ." *Id.* (quoting *Seaman v. Seacor Marine LLC*, 326 F. App'x 721, 725 (5th Cir. 2009)).

An expert witness must also prepare a report containing, among other things, "a complete statement of all opinions the witness will express and the basis and reasons for them and the facts or data considered by the witness in forming them." FED. R. CIV. P. 26(a)(2)(B) (citation modified). This means expert witnesses "must prepare a detailed and complete written report, stating the testimony the witness is expected to present during direct examination, together with the reasons therefor." *Klein v. Fed. Ins. Co.*, No. 7:03-CV-102, 2014 WL 6885973, at *2 (N.D. Tex. Dec. 8, 2014) (citing FED. R. CIV. P. 26 advisory committee's note to 1993 amendments). "[T]he purpose of the reports is to avoid the disclosure of 'sketchy and vague' expert information, as was the practice under the former rule." *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc.*, 73 F.3d 546, 571 (5th Cir. 1996) (quoting FED. R. CIV. P. 26 advisory committee's note to 1993 amendments).

## II. Analysis

Allstate moves to exclude the opinions of Plaintiff's two retained experts: Chris Rhynehart, a contractor who inspected Plaintiff's home; and Brandon Allen, a consultant whom Plaintiff designated as a rebuttal expert after Rhynehart was deposed. *See* ECF No. 32 at 1–2.

### A. Chris Rhynehart

Rhynehart's report is based on "his inspection of the property; a review of the policy at issue; a review of the client's claim file and photographs; [and] industry standard Xactimate price lists and software as well as his knowledge, training, education, and experience." ECF No. 28 at 198. Most relevant here is his opinion that "the May 1, 2022 storm caused damage to Plaintiff's roof." *Id.* Allstate argues that Rhynehart's opinions are irrelevant because he made no attempt to connect the damage to the May 1 storm or any

storm that occurred during the Policy period of February 1, 2022 to February 1, 2023. *See* ECF No. 30 at 10–11.

Rhynehart's opinions about whether the May 1 storm caused the damage must be excluded. Plaintiff's Expert Witness Designation states that Rhynehart will testify that "the May 1, 2022 storm caused damage to Plaintiff's roof" and that "the damage observed to Plaintiff's property is consistent with the weather reported near the subject property and in Hereford, Texas." ECF No. 28 at 198. But that appears nowhere in his report. Rhynehart's report says only that Plaintiff's property "shows clear signs of a previous severe hail storm," with multiple areas "indicat[ing] significant impact damage." *Id.* at 203. He makes no attempt to connect that damage to the May 1 storm, or to date the damage at all. His report includes a weather report showing that a hail storm occurred near Plaintiff's property on May 1, 2022, but the same report lists eleven other hail storms that impacted Plaintiff's property in the years before the May 1 storm. Rhynehart also fails to consider any possible alternative causes of the damage. Nor does he present any information about the condition of Plaintiff's roof before the storm.

Plaintiff concedes that Rhynehart's opinions fail to connect the roof damage to the May 1 storm. *See* ECF No. 32 at 3 (noting that Rhynehart "acknowledge[d] that he did not independently date the hail damage"). To plug this hole in Rhynehart's report, Plaintiff argues instead that Allstate "ignores a critical fact: Allstate itself has already determined— and repeatedly confirmed through its own adjusters, experts, and representatives—that May 1, 2022 is the operative date of loss." *Id.* "Thus," Plaintiff contends, "the real dispute is not *when* the damage occurred" but whether the damage is the cause of the leak in Plaintiff's roof. *Id.* at 4.

But Plaintiff's only support for that idea is a document that lists Plaintiff's claim details, including the "Date of Loss," which it shows as May 1, 2022—the date of the storm.

7

Allstate contends, and Plaintiff does not dispute, that *Plaintiff* reported this date to Allstate and it is "not confirmation by Allstate that the reported date of loss is accurate." ECF No. 36 at 2. Thus, the document is not proof that Allstate concedes the May 1 storm caused the damage, as Plaintiff alleges.

The Court finds that Rhynehart's expert opinions as to causation are not relevant because they fail to speak to whether the May 1 storm caused the damage that resulted in a leak in Plaintiff's roof. It is Plaintiff's burden to establish this. *See Seger v. Yorkshire Ins. Co.*, 503 S.W.3d 388, 400 (Tex. 2016) ("To prove coverage, the plaintiff must establish that . . . the injury or damage was incurred at a time covered by the policy." (citing *Emps. Cas. Co. v. Block*, 744 S.W.2d 940, 944 (Tex. 1988))). Stated differently, because the Cosmetic Damage Endorsement in Plaintiff's policy excludes coverage for merely superficial damages, the jury in this case would be asked to decide the cause of any *non*-cosmetic damage to Plaintiff's roof. Because Rhynehart's report does not tie any non-cosmetic damage he observed to the May 1 storm, and in fact fails to date any damages at all, it would not aid the jury in that task. Accordingly, his opinions about whether the May 1 storm damaged Plaintiff's roof must be excluded.[2]

However, Plaintiff's Expert Witness Designation states that Rhynehart would also testify about the overall "condition of the property, the presence of wind and hail damage, the extent of the damage, and to provide an unbiased estimate" as to the cost of repair. ECF No. 28 at 198. Allstate does not contest Rhynehart's competence to testify to these other

---

[2] Allstate also challenged Rhynehart's competence to testify about Allstate's claims handling practices and policy interpretations. *See* ECF No. 30 at 11–12. Plaintiff's Response notes that this "language in Plaintiff's designation" was "included in error, and Plaintiff hereby revises his designation to exclude Mr. Rhynehart's opinions on these matters." ECF No. 32 at 4. "Because the Parties agree, the issue is moot." *Id.*

matters.³ The Court accordingly **GRANTS in part** Allstate's Motion to Exclude as to Chris Rhynehart. Rhynehart may testify as to these other general issues but may not offer an expert opinion "that the May 1, 2022 storm caused damage to Plaintiff's roof" or other parts of Plaintiff's property. *Id.*

### B. Brandon Allen

Allstate also seeks to exclude the expert testimony of Brandon Allen, whom Allstate describes as "merely an untimely designated expert witness" rather than a "rebuttal expert." ECF No. 30 at 12.

Rule 26(a)(2)(D)(ii) allows parties to designate rebuttal expert witnesses "within 30 days after the other party's disclosure" of evidence the party wishes to rebut. FED. R. CIV. P. 26(a)(2)(D)(ii). Rebuttal evidence must be "intended solely to contradict or rebut evidence on the same subject matter identified by" the other party. *Id.* Thus, under Rule 26, courts ask the following questions to determine if an expert witness is a rebuttal witness:

> First, what evidence does the rebuttal expert purport to contradict or rebut? Second, is the evidence disclosed as rebuttal evidence on the same subject matter as that identified by another party in its Rule 26(a)(2)(B) disclosure? Third, is the evidence disclosed as rebuttal evidence intended solely to contradict or rebut that evidence?

*UWorld LLC v. USMLE Galaxy LLC*, No. 3:23-CV-447, 2025 WL 1246434, at *4 (N.D. Tex. Apr. 28, 2025) (quoting *Poly-Am., Inc. v. Serrot Int'l, Inc.*, No. 3:00-CV-1457, 2002 WL 1996561, at *15 (N.D. Tex. Aug. 26, 2002)). "Rebuttal is a term of art, denoting evidence introduced by a plaintiff to meet new facts brought out in his opponent's case in chief." *Club v. Energy Future Holdings Corp.*, No. W-12-CV-108, 2014 WL 12690016, at *4 (W.D. Tex.

---

³ Allstate's Reply cites *Ulico Casualty Company v. Allied Pilots Assocation*, 262 S.W.3d 773, 778 (Tex. 2008), for the proposition that "Rhynehart's opinions are only relevant if he can tie the damages he observed to the Storm." ECF No. 36 at 2. This objection is well-taken, but it speaks only to Rhynehart's expert testimony that the May 1 storm caused the damage, not to the other types of expert testimony he would offer. Rhynehart's other proposed testimony—about the property's general condition and the estimated cost of repair—is relevant even if he does not "tie th[ose] damages" to the May 1 storm.

Feb. 20, 2014) (quoting *Rodriguez v. Olin Corp.*, 780 F.2d 491, 494 (5th Cir. 1986)). This means "a party's rebuttal disclosures cannot be used as 'an extension of the deadline by which a party must deliver the lion's share of its expert information.'" *Id.* (quoting *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc.*, 73 F.3d 546, 571 (5th Cir. 1996)). "The trial judge has broad discretion" to decide whether to admit expert rebuttal evidence, "even if the evidence could have been received as part of the case in chief." *Id.* (citing *United States v. Sadler*, 488 F.2d 434, 435 (5th Cir. 1974)).

Plaintiff has designated Allen as a "testifying expert to contradict or rebut the evidence, opinions, analysis, and expert designations" of Allstate's two retained expert witnesses, Suzanne Arambel and Russell Letcher. ECF No. 28 at 232. Specifically, Allen would testify "on the topics of the purpose of granular coating and valuation of the claimed damage, including but not limited to the issue of whether [the] hail damage was functional or cosmetic damage." *Id.* But while Allen would testify to the same overall subject matter as Allstate's experts, "the rebuttal designation is considered pursuant to 'the findings' of the testifying expert, not simply 'the same general subject matter of the case.'" *Energy Future Holdings*, 2014 WL 12690016, at *4. That is, a rebuttal expert's report must relate to the specific findings advanced by the opposing expert, not simply offer a different view of the case. Allen's expert report—much like Rhynehart's report—simply offers a view of the evidence that favors Plaintiff. Allen's report does not even mention Allstate's experts, much less attempt to contradict specific findings they make in their reports.

Even if Allen's report did clear the threshold set by the second *UWorld* question, it falters at the third. "[T]he mere fact that an opinion contradicts an opposing expert's opinion does not automatically establish a proper rebuttal report." *Energy Future Holdings*, 2014 WL 12690016, at *4. Rather, it must "*solely* . . . contradict or rebut" the opposing expert's

10

findings. FED. R. CIV. P. 26(a)(2)(D)(ii) (emphasis added). As already noted, Allen's report does not attempt to specifically rebut the findings of Allstate's experts. But even if it did, his report goes far beyond that and offers its own "separate and distinct analysis." *Energy Future Holdings*, 2014 WL 12690016, at *4 (quoting *Home Design Servs., Inc. v. Hibiscus Homes of Fla., Inc.*, No. 6:03-CV1860, 2005 WL 2465020, at *5 (M.D. Fla. Oct. 6, 2005)). Rule 26 forbids this. The Court therefore **GRANTS** Allstate's Motion to Exclude as to Brandon Allen.

### MOTION FOR SUMMARY JUDGMENT

### I. Legal Standard

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" if its existence or non-existence "might affect the outcome of the suit under the governing law," and the dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Brown v. City of Hou., Tex.*, 337 F.3d 539, 541 (5th Cir. 2003) ("Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." (citing *Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 577 (5th Cir. 2003))).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion" and identifying the portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party makes this showing, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)

(quoting FED. R. CIV. P. 56(e)). While the moving party is not required to negate each element of the nonmoving party's case, it can meet its burden by demonstrating the "absence of facts supporting the elements" of the nonmoving party's causes of action. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076 n.16 (5th Cir. 1994) (citing *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986)).

## II. Analysis

Allstate seeks summary judgment on all three of Plaintiff's claims, arguing that Plaintiff "cannot refute" its evidence that the damage to the roof is not covered. ECF No. 27 at 12. Accordingly, to defeat Allstate's Motion, Plaintiff must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting FED. R. CIV. P. 56(e)).

### A. Breach of Contract

"The interpretation of an insurance policy is a question of law for the court to decide based on the language in the policy itself, not a question of fact to be determined by the jury." *Davis v. Nat'l Lloyds Ins. Co.*, 484 S.W.3d 459, 470 (Tex. App.—Houston [1st Dist.] Oct. 13, 2015, pet. denied). Under Texas law, "insurance policies are contracts subject to the rules of contract construction." *Guzman*, 456 F. Supp. 3d at 856 (quoting *Certain Underwriters at Lloyd's of London v. Lowen Valley View, LLC*, 892 F.3d 167, 170 (5th Cir. 2018)). Accordingly, to prove his breach of contract claim, Plaintiff must "show that he filed an insurance claim for losses that are covered by his policy, that [Allstate] denied his legitimate claim, and that the denial caused" him harm. *Id.* Allstate contends that because Plaintiff "cannot present any competent summary judgment evidence to refute Allstate's evidence that the damages to the roof are not covered pursuant to the Cosmetic Damage Endorsement," the Court should grant summary judgment. ECF No. 27 at 17–18.

As the Court has already noted, the Cosmetic Damage Endorsement in Plaintiff's Policy provides that "cosmetic damage to Plaintiff's roof caused by hail is not covered unless it results in water leaking through the surface." *Amphay*, 2023 WL 2491285, at *2 (interpreting identical policy language). It is Allstate's burden to show that the Endorsement applies. *See Century Sur. Co. v. Hardscape Const. Specialties Inc.*, 578 F.3d 262, 265 (5th Cir. 2009) (noting that Texas law places "the burden of establishing an exclusion upon the insurer"). Here, Allstate's adjuster and both of its experts found that the damage to Plaintiff's roof is purely cosmetic and will not cause water to leak through the roof surface. *See* ECF No. 27 at 13 (Arambel found the roof damage to be "cosmetic in nature" and that it does not "affect the performance or longevity of the roof covering"); *id.* ("Letcher likewise agrees that the cosmetical hail indentions to the roof panels do not impact the function of the roof and are not damages that result in water leaking through the roof surface."). As for the cause of the leaking in Plaintiff's garage, Arambel cited "deteriorated flashing" as the reason for the leak, while Letcher attributed it to "improperly installed flashing."[4] ECF No. 34 at 5. Both agree that the culprit was deficient flashing, not the May 1 hail storm. Thus, Allstate has met its burden of showing that the Endorsement applies to exclude coverage for Plaintiff's roof. The burden then shifts back to Plaintiff to "establish[] an exception to an exclusion." *Century Sur. Co.*, 578 F.3d at 265.

Plaintiff claims Allstate "has failed to offer a reliable account for the cause of the roof leak other than hail damage." ECF No. 34 at 10. In other words, because Allstate has asserted at least two "different explanations for the cause of the interior water damage," it cannot

---

[4] "Roof flashing is a thin material, usually galvanized steel, that professional roofers use to direct water away from critical areas of the roof .... Damaged or improperly installed roof flashing, especially around the chimney, roof cricket or dormer, is one of the most common causes of roof leaks." *What Is Roof Flashing?*, IKO NORTH AMERICA (last visited Feb. 9, 2026), https://www.iko.com/blog/what-is-roof-flashing-how-to-install-it/ [https://perma.cc/9A57-6KDW].

"meet its burden of proving" that the Endorsement applies. *Id.* at 10. This misunderstands Allstate's burden. It is not incumbent upon Allstate to prove that a single cause other than the May 1 storm is the reason for the leak in Plaintiff's garage. Rather, to trigger application of the Endorsement, Allstate must show only that the May 1 storm was *not* the cause of the leak, even if Plaintiff's roof bears signs of hail-related cosmetic damage. Allstate has done so. Besides, Plaintiff is wrong to suggest that Allstate's experts are inconsistent. While they phrase their reports slightly differently—Arambel cites "deteriorated flashing" while Letcher refers to "improperly installed flashing"—both agree that deficient flashing caused the leak. And both agree the May 1 storm did not.

Attempting to manufacture a factual dispute, Plaintiff writes that he "observed the interior water damage within weeks of the storm and pointed the damage out to Allstate's inspector because he attributed the interior leak to the [two-inch] hailstones that impacted his roof." ECF No. 34 at 11. But Plaintiff "cannot raise a fact issue by citing this one statement from a witness not qualified as an expert to opine on causation"—here, Plaintiff's own deposition testimony.[5] *Amphay*, 2023 WL 2491285, at *2. Nor can Plaintiff rely on the testimony of his own experts. The Court has excluded Brandon Allen's testimony, and Chris Rhynehart offers no opinion that any damage to the roof has resulted in water leaking through Plaintiff's roof. He admitted at his deposition that he observed no leaking through Plaintiff's roof and could not predict when, if ever, there might be "water intrusion" through the roof. ECF No. 28 at 421–22. Even if Rhynehart did offer such an opinion, the Court found that he failed to show any connection between roof damage and the May 1 hail storm and

---

[5] As Allstate points out, even if Plaintiff *were* competent to opine on causation, the portion of his testimony he cites is about water damage in a bedroom from a broken window, not the alleged roof leak in his garage. *See* ECF No. 28 at 448.

accordingly excluded him from offering expert testimony on causation. Thus, Allstate is entitled to summary judgment on Plaintiff's breach of contract claim.

### B. Bad Faith and Prompt Payment of Claims Statute

Allstate also seeks summary judgment as to Plaintiff's two tag-along claims: that Allstate acted in bad faith and breached its duties under Texas's Prompt Payment of Claims Act ("TPPCA"). *See* ECF No. 27 at 18–20; ECF No. 1-5.

"As a general rule there can be no claim for bad faith when an insurer has promptly denied a claim that is in fact not covered." *Chrysler Ins. Co. v. Greenspoint Dodge of Hou., Inc.*, 297 S.W.3d 248, 253–54 (Tex. 2009); *see also Bible Baptist Church v. Church Mut. Ins. Co.*, No. 2:21-CV-093, 2023 WL 1931912, at *9 (N.D. Tex. Jan. 18, 2023), *report and recommendation adopted*, No. 2:21-CV-093, 2023 WL 1931350 (N.D. Tex. Feb. 10, 2023) ("[W]here no breach of contract claim is sustained, no bad faith claim can survive."). In rare cases where the insurer has "commit[ted] some act, so extreme, that would cause injury independent of the policy claim," the insurer may also be liable for extra-contractual damages under Texas's "independent-injury rule." *USAA Texas Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 499 (Tex. 2018). Here, the Court rejected Plaintiff's breach of contract claim, and Plaintiff has presented no evidence of damages independent of his Policy. It follows that Plaintiff's bad faith claim must be rejected as well.

Plaintiff also brings a claim under the TPPCA, which imposes "non-payment requirements and deadlines, deadlines for paying claims, and enforcement" obligations on insurers. *Barbara Techs. Corp. v. State Farm Lloyds*, 589 S.W.3d 806, 813 (Tex. 2019). As Plaintiff concedes, however, liability under the TPPCA is "contingent on finding the insurer liable for denying an insured's claim." ECF No. 34 at 15; *see also Agredano v. State Farm Lloyds*, 975 F.3d 504, 507 (5th Cir. 2020) ("The statute requires [both] liability under the

policy *and* a failure to comply with the timing requirements of the TPPCA." (emphasis added)); *Barbara Techs. Corp.*, 589 S.W.3d at 813 ("To prevail under a claim for TPPCA damages . . . the insured must establish: (1) the insurer's liability under the insurance policy, and (2) that the insurer has failed to comply with one or more sections of the TPPCA in processing or paying the claim."). Allstate is not liable for denying Plaintiff's claim. It follows that there can be no liability under the TPPCA.

CONCLUSION

For the foregoing reasons, the Court **GRANTS in part** Allstate's Motion to Exclude and **GRANTS** its Motion for Summary Judgment in its entirety. This case is **DISMISSED** with prejudice.

**SO ORDERED.**

February 23, 2026

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE